# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

U.S. Commodity Futures Trading Commission,      Civil No. 09-259 (DWF/AJB)

    Plaintiff,

v.

Charles E. Hays, *also known as* Chuck Hayes; and Crossfire Trading, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

_____

Rosemary Hollinger, Esq., Scott Williamson, Esq., Susan J. Gradman, Esq., and David Slovick, Esq., U.S. Commodity Futures Trading Commission, and James S. Alexander, Assistant United States Attorney, United States Attorney's Office, counsel for Plaintiff.

John R. Neve, Esq., Neve Law, PLLC; and Evan Weiner, Esq., counsel for Defendants.
_____

## INTRODUCTION

The matter is before the Court on a Motion for Summary Judgment brought by the Commodity Futures Trading Commission ("CFTC"). For the reasons set forth below, the Court grants the motion.

## BACKGROUND

The case arises out of a day-trading Ponzi scheme orchestrated by Charles E. Hays ("Hays") through Crossfire Trading, LLC ("Crossfire"). Based on the parties' representations and Hays' own admissions in his criminal case, the following facts are undisputed.

*Procedural History*

On February 4, 2009, a criminal Complaint and later a Criminal Information was filed against Hays. (Crim. No. 09-91 (DWF), Doc. Nos. 1 & 19.) Hays entered into a plea agreement and pled guilty on April 14, 2009, to the three Counts charged in the Information: (1) mail fraud in violation of 18 U.S.C. § 1341; (2) wire fraud in violation of 18 U.S.C. § 1343; and (3) structuring in violation of 31 U.S.C. § 5324(a)(3) and (d)(2). (*Id.*, Doc. Nos. 28-29.) On May 6, 2010, the undersigned sentenced Hays to 117 months in prison, with 3 years of supervised release following his prison term. (*Id.*, Doc. No. 72.) Together with a $300 special assessment, the Court ordered Hays to pay $21,601,065.87 in restitution to defrauded investors. (*Id.*, Doc. No. 72.)

On December 5, 2009, the CFTC filed a five-count civil Complaint against Defendants Hays and Crossfire, seeking injunctive and other equitable relief. (Doc. No. 1.) The Court entered an *ex parte* Statutory Restraining Order pursuant to Section 6c of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 13a-1 (2006), on February 5, 2009. (Doc. No. 15.) On March 11, 2009, the Court entered a Consent Order for Preliminary Injunction. (Doc. No. 29.) To date, Defendants have not filed an Answer to the CFTC's Complaint, although they did submit an opposition to the CFTC's Motion for Summary Judgment. (Doc. No. 42.) Their opposition focuses only on the scope of relief requested by the CFTC.

*Underlying Background*

From approximately January 2001 through February 2009, Hays, individually and as the controlling person of Crossfire[1] fraudulently solicited and accepted $40,441,587.37 from 114 individuals for the purpose of trading commodity futures in a commodity pool on the investors' behalf. Hays, formerly of Rosemount, Minnesota, never registered with the CFTC in any capacity.

Specifically, Hays represented to prospective and actual customers, including investor Bruce Hendry, that Hays and Crossfire operated a commodity pool that day-traded stock index and crude oil futures on behalf of pool participants and that the pool earned a 3% monthly return with no losing months. Hays provided pool participants with false account statements showing that Crossfire had over $37 million in a commodity futures trading account carried at Dorman Trading, LLC ("Dorman"), a futures commission merchant ("FCM") registered with the CFTC. Although Hays individually had an account with Dorman until July 2008, Crossfire never had an account with Dorman, and neither Hays nor Crossfire informed investors that Crossfire did not have an account with Dorman.

---

[1] Crossfire was incorporated in March 2006 in Minnesota. There is no dispute that Hays was the sole owner and an associated person ("AP") of Crossfire, which he controlled and operated out of his Rosemount residence until he was arrested. Crossfire, through Hays, represented to prospective and existing pool participants that it operated a commodity pool that traded stock index and crude oil futures. Although Crossfire did act as a commodity pool operator ("CPO"), it never registered with the CFTC.

In response to questions about the source of Hays/Crossfire's funds, Hays told at least some investors that Crossfire's account at Dorman was introduced to Dorman by an entity called NDX Futures ("NDX"). Hays also showed some investors a false account statement on Dorman letterhead in November 2008, which purportedly showed Crossfire's entire pool. In reality, however, Crossfire did not have an account with NDX or Dorman. Instead, NDX acted as the introducing broker ("IB") for an account Hays opened at Dorman in his own name in January 2006, which Hays initially funded with $300,000 in March 2006. At that time, Hays falsely represented to NDX that he did not solicit any customer funds and that he used his own funds to trade in this account. The account number on the Dorman November 2008 statement that Hays showed to investors for Crossfire was one digit different from Hays' actual account, and that account is actually the account for a different Dorman customer unrelated to Hays or Crossfire. Hays stopped trading through his Dorman account in March 2008, and he closed the account and withdrew its remaining balance in July 2008.

Hays, through Crossfire, did not use the funds to commodity futures trading through Dorman. Rather, it is undisputed that Hays and Crossfire misappropriated investor funds by way of a Ponzi scheme to fund Hays' own expenses. In order to create an air of legitimacy to the Ponzi scheme, Hays used funds received from new investors to make payments to earlier investors. In total, Hays and Crossfire repaid customers $18,848,337 of the $40,441,587.37 they solicited and accepted for the purposes of commodity futures trading, which left Defendants with $21,593,250.37 in investor funds.

4

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**I.     Defendants Violated Sections 4b, 4*o*(1), 4m(1), and 4k(2) of the Act**

In its Complaint, the CFTC alleged five counts against Hays and Crossfire, which are titled as follows: (1) violations of Sections 4b(a)(2)(i) and (iii) of the Act: Fraud by Misrepresentation and Misappropriation; (2) violations of Section 4b(a)(2)(ii) of the Act:

5

Fraud by Making False Statements; (3) violations of Section 4*o*(1) of the Act: Fraud by Commodity Pool Operators; (4) violation of Section 4m(1) of the Act: Failure to Register as a CPO; and (5) violation of Section 4k(2) of the Act: Hays' Failure to Register as an AP of Crossfire.

In their opposition memorandum, Defendants did not dispute that the CFTC had met its burden of establishing that Defendants had violated the sections of the Act as alleged in Counts One through Five or that Hays was liable as the controlling person of Crossfire pursuant to Section 13(b) of the Act. At the motion hearing, Defendants also acknowledged that they were not contesting that the CFTC had established Defendants' liability for the allegations stated in the Complaint. Based on Defendants' concessions and the Court's review of the record before it, the Court finds that there is no genuine issue of material dispute that Defendants violated Sections 4b,[2] 4*o*(1), 4m(1), and 4k(2) and Section 13(b) of the Act, as alleged in the Complaint.

---

[2] Depending on the time frame of the acts involved, Section 4b refers either to Sections 4b(a)(1)(A), (B), and (C) of the Act, as amended by the CRA, codified at 7 U.S.C. §§ 6b(a)(1)(A), (B), and (C), for conduct occurring on or after June 18, 2008, and to Sections 4b(a)(2)(i), (ii), and (iii) of the Act, codified at 7 U.S.C. §§ 6b(a)(2)(i), (ii), and (iii), for conduct occurring before June 18, 2008.

## II. Injunctive Relief with Respect to Hays[3]

Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the CFTC seeks permanent injunctive relief against Hays, enjoying him from further violations of each section of the Act that he violated. The CFTC also asks the Court to invoke its discretion under Section 6c of the Act and permanently enjoin Hays from trading for himself or others and from engaging in business activities that might again involve Hays in future violations. The CFTC asserts that a permanent trading prohibition against Hays is appropriate because Hays repeatedly committed core violations of the Act by making misrepresentations to the public and misappropriating investor funds for over eight years. According to the CFTC, Hays' conduct adversely impacted the integrity and orderly operation of the futures market and, for that reason, a permanent trading ban is appropriate because there is a reasonable likelihood of future violations by Hays.

Hays responds by not contesting to an injunction prohibiting future violations of the Act itself, but he argues that a permanent bar against him trading personally is inappropriate and overly broad. Hays contends that it is the extent to which the violations actually impact the orderly operations of the market itself that determines whether a permanent trading ban is appropriate. Hays explains that his violations, while grave, did

---

[3]  In their opposition, Defendants did not oppose the CFTC's request for injunctive relief with respect to Crossfire. (*See, e.g.*, Doc. No. 42 at 4.) Given this and Defendants' failure to contest their liability as alleged in Counts One through Five, the Court exercises its equitable power and grants the CFTC's requested injunctive relief with respect to Crossfire.

not affect the integrity of the futures market and for this reason, there is no justification for a permanent trading ban.

The Court agrees with the CFTC. Hays' conduct, which spanned 8 years and resulted in over $20 million in losses, shows what little regard Hays had for the futures market. After reviewing the cases cited by the parties and acknowledging the lack of recent cases discussing this issue, the Court exercises its discretion and concludes that Hays' activities justify a permanent trading ban because Hays has shown himself to represent an inherent threat to the integrity of the futures market. *See In re Staryk*, [2003-2004 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,826, at 56,452 (CFTC July 23, 2004) (explaining that a bar prohibiting a defendant is appropriate when the record shows that a [defendant's] misconduct represents an inherent threat to the integrity of the futures markets in the public eye); *In re Miller*, [1994-1996 Transfer Binder] CCH ¶ 26,440, at 42,914 (CFTC June 16, 1995), remanded on other grounds, *Miller v. CFTC*, 197 F.3d 1227 (9th Cir. 1999) (CFTC affirming with "no difficulty" the trial court's permanent trading ban because defendant's pattern of wrongdoing that extended over several years posed a danger to the integrity of the market sufficient to warrant a permanent bar).

## III.    Restitution

Because restitution was awarded to defrauded Crossfire pool participants in the criminal case discussed above, the CFTC does not seek additional restitution in this case. Given this, the Court agrees that an additional award of restitution is unnecessary.

## IV. Disgorgement

The CFTC asks the Court to disgorge $19,977,250.37 from Defendants. The CFTC arrives at this amount by taking $40,441,587.37 (the amount that Defendants earned as a result of their fraudulent scheme from January 2001 through February 2009) and subtracting from that amount $18,848,337 (the amount that Defendants paid back to investors) and $1,616,000 (the amount Defendants lost trading commodity futures).

Defendants oppose this request and respond by pointing out that it is the CFTC's burden to prove that its disgorgement calculation is a reasonable approximation of the actual profits that Defendants received as a result of the commodities law violations. Defendants contend that the CFTC's calculations with respect to disgorgement are incorrect and that its reliance on the criminal case is misplaced because the criminal case did not address the issue of the amount of Hays' ill-gotten gains; rather, the criminal case only addressed investor losses.

"District courts have the power to order disgorgement as a remedy for violations of the Act for the purpose of depriving the wrongdoer of his ill-gotten gains and deterring violations of the law." *CFTC v. Am. Metals Exchange Corp.*, 991 F.2d 71, 76 (3d Cir. 1993) (internal quotations and citations omitted). The Court concludes that the CFTC's request is appropriate. There is no dispute in the record concerning the actual figures used to arrive at the CFTC's disgorgement calculation, which represents the amount of investor money Defendants retained after accounting for repayments and trading losses. Given this, the Court concludes that $19,977,250.37 is a reasonable approximation of profits causally connected to Defendants' violations of the Act. *See, e.g., SEC v.*

*Haligiannis*, 470 F. Supp. 2d 373, 384-85 (S.D.N.Y. 2007) (explaining that disgorgement amount need not be an exact calculation but rather a reasonable approximation of profits causally connected to the violation).

V.     **Civil Monetary Fine**

Section 6c(d)(1) of the Act allows the CFTC to seek a civil penalty for each violation of the Act. *See* 7 U.S.C. § 9(d)(1); 17 C.F.R. § 143.8 (providing a formula for calculating the civil fine that includes inflation in the calculation). Under this section, the CFTC asks the Court to impose a civil monetary penalty upon Defendants, which represents triple the monetary benefit Defendants received. In this case, the CFTC seeks a civil monetary penalty of $64,779,751.11, which is three times the $21,593,250.37 amount discussed above.

Defendants respond that the CFTC is seeking excessive penalties, and they point out that civil penalties are often far less than the amount of disgorgement. Defendants also explain that courts normally take into account a defendant's other financial liability when determining the appropriate civil penalty. Given that the Court has already imposed a long criminal sentence and a large restitution amount upon Hays in the criminal matter, Defendants ask the Court to find the CFTC's request excessive.

Given that Hays must repay his criminal penalty before turning to his civil penalty, the imposition of a civil monetary fine (or for that matter, disgorgement) is largely academic. Nonetheless, the Court was persuaded by the CFTC's comments at the motion hearing that this action is necessary to adequately address Defendants' violations and deter against future violations while the events leading to this lawsuit are fresh in

people's minds.  Given this, the Court agrees with the CFTC and imposes a civil monetary fine upon Defendants in the amount of $64,779,751.11, plus post-judgment interest.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:[4]

1. The CFTC's Motion to Summary Judgment (Doc. No. [34]) is **GRANTED**.

2. Defendants Hays and Crossfire are permanently prohibited from directly or indirectly:

> (a) cheating or defrauding or attempting to cheat or defraud other persons in or in connection with any order to make, or the making of any contract of sale of any commodity for future delivery, made or to be made, for or on behalf of any other person in violation of Sections 4b(a)(1)(A) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 4b(a)(1)(A);
>
> (b) willfully making or causing to be made to such other person any false report or statement thereof, or willfully entering or causing to be entered for such other person any false record thereof, in violation of Section 4b(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 4b(a)(1)(B);
>
> (c) willfully deceiving or attempting to deceive other persons in or in connection with any order to make, or the making of any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person, in violation of Section 4b(a)(1)(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 4b(a)(1)(C);
>
> (d) employing any device, scheme or artifice to defraud any client or participant or prospective client or participant or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant by use of the mails or any means or instrumentality of interstate commerce, in

---

[4] The following language is adopted directly from the CFTC's proposed order.

violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B);

(e)  making use of the mails or any means or instrumentality of interstate commerce in connection with a business as a CPO, unless first registered with the Commission as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1);

and

(f)  associating with a CPO as a partner, officer, employee, consultant, or agent, or any person occupying a similar status or performing similar functions, in any capacity that involves (1) the solicitation of funds, securities, or property for participation in a commodity pool or (2) the supervision of any person or persons so engaged, unless such person is registered with the Commission as an AP of such CPO, or permitting such a person to become or remain associated with the CPO in any such capacity, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2).

3.  Defendants Hays and Crossfire also are permanently prohibited from directly or indirectly:

(a)  trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

(b)  entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and/or 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and/or 2(c)(2)(C)(i)) ("forex contracts") for their personal accounts or for any accounts in which it has a direct or indirect interest;

(c)  having any commodity futures, options on commodity futures, commodity options and/or forex contracts traded on their behalf;

(d)  controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options and/or forex contracts;

(e) soliciting, receiving or accepting funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options and/or forex contracts;

(f) applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010);

and

(g) acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person (as that term is defined in Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2006)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010).

4. The injunctive provision contained in paragraphs 2 and 3 of this Order shall be binding upon Defendants, upon any person who acts in the capacity of officer, agent, employee, attorney, successor and/or assign of either of the Defendants and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with either of the Defendants.

5. Defendants shall disgorge jointly and severally the monetary benefits of their unlawful activity. From January 2001 to February 2009, Hays and Crossfire earned $40,441,587.37 as a result of their fraudulent scheme; they paid back approximately $18,848,337 to investors and lost $1,616,000 trading commodity futures. Therefore, they shall disgorge $19,977,250.37 ($40,441,587.37 less $18,848,337 less $1,616,000).

6. Section 6c(d)(1) of the Act, 7 U.S.C. § 9(d)(1), provides that a civil penalty may be assessed against a defendant for each violation of the Act. That section allows

assessing a civil monetary penalty of not more than $120,000 for each violation during the relevant time prior to October 22, 2004, $130,000 for each violation between October 23, 2004 and October 22, 2008, and $140,000 for each violation after October 22, 2008, or triple the monetary gain to each Defendant for each violation of the Act and Regulations. In light of the egregiousness and continuing nature of the fraud in this case, which spanned over eight years, such an assessment is appropriate, and Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of $64,779,751.11, which represents triple their monetary gain, plus post-judgment interest.

7. Pursuant to 28 U.S.C. § 1961, post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined at the Treasury Bill rate prevailing on the date of entry of this Order.

8. All frozen funds shall be used to make restitution to Defendants' defrauded customers pursuant to the criminal judgment restitution obligations discussed above, and all prior freeze orders shall be lifted upon entry of this Order.

9. No provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against any Defendant in any other proceeding.

10. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order, to ensure continued compliance with any provision of this Order, and to hold Defendants in contempt for any violation of a provision of this Order.

11. All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:

> Associate Director
> Division of Enforcement - Central Region
> Commodity Futures Trading Commission
> 525 West Monroe Street, Suite 1100
> Chicago, Illinois 60661

Notice to Defendant:

> John Neve
> Attorney for Charles Hays, Jr. and Crossfire Trading, LLC
> 7760 France Ave., Suite 1100
> Edina, MN 55435

All such notices to the CFTC shall reference the name and docket number of this action.

12. In the event that Defendants change their residential or business telephone number(s) and/or address(es) at any time, they shall provide written notice of the new number(s) and/or address(es) to the CFTC within twenty (20) calendar days thereof.

13. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

14. If any provision of this Order, or if the application of any provisions or circumstances is held invalid, the remainder of the Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

15. Copies of this Order may be served by any means, including facsimile transmission and Federal Express, upon any financial institution or other entity or person

that may have possession, custody, or control of any documents or assets of Hays or Crossfire, or that may be subject to any provision of this Order. Susan Gradman and David Slovick, employees of the CFTC, are hereby specially appointed to serve process, including this Order and all other papers in this case.

16. Defendants shall serve all pleadings, correspondence, and notices required by this Order, and other materials on the CFTC by delivering a copy to Susan Gradman and David Slovick, Division of Enforcement, Commodity Futures Trading Commission, 525 W. Monroe, Suite 1100, Chicago, Illinois 60661.

17. This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action, including any motion by a Defendant to modify, or for relief from the terms of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 27, 2011                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge